We are ready to proceed, and we'll call the first case. United Statesexrel Charles Wilkins and Daryl Willis versus United Health Group. Mr. Bigelman, or Bigelman, correct? Bigelman. Thank you. Your Honor, if it pleases the Court, I would request four minutes for rebuttal. Yes, sir. Thank you, Your Honor. Kickbacks, illegal incentives, illegal marketing. The trial judge below says that these items are trivial. Trivial versus material is the issue in false claims act cases. In all the cases, whether they're a straight-out fraud case, an express certification case like this one, or... But by invoking the term trivial, are you getting then to, are you implying the issue of materiality and how it may apply in the analysis of this FCA? Absolutely. Or a kickback case such as this. This case is an express certification and also a kickback case. Is it also a case in which we are going to need to deal with whether implied certification is a viable theory? Well, saying that we believe it is, but we don't believe that this case you have to reach that contention. This is an express certification case. It is not an implied certification case. The judge below tries... What's expressed then in the marketing provisions upon which you rely and refer to in your pleading? Judge, I would point the court to our brief pages 21 through 28, but also to 42 CFR part 422 and 423. But to answer your question, this is a Medicare Advantage case. And Medicare Advantage was a historic departure from the way that Medicare was delivered to the public by the federal government. Prior to Medicare Advantage, the government was the sole marketer, was the sole deliverer of the Medicare program. In this particular case, what the government did is it set up a private sector, a privatization. I understand all that, but what I was suggesting in my last question to you is you're satisfied to rely upon express full certification, which we have recognized in this circuit. So in looking at the complaint, because we're reviewing the grant of a motion to dismiss, I'm curious about what kind of a nexus has been pled here between the marketing provisions and practices you allege took place and some claim for payment. Judge, each month, since this is a capitization case where the provider gets paid not for the services rendered, but for the insurance provided, when they enroll a patient, when they enroll a citizen, they get paid every month in advance whether or not they provide actual services. Every single month they must certify to the Medicare Advantage regulations, which include the marketing guidelines. And the marketing guidelines are expressly stated in the CFR site that I gave you and are pled in the complaint. And it's pled in the complaint that each month they must certify that they adhere to these guidelines, which include a certification that they adhere, they have not violated the anti-kickback statute. So the payment depends on the number of enrollees that are in the Medicare program. Right. In fact, the enrollment is the claim, if you will, because they never submit a claim for health care. They submit a claim for the enrollment. Paid monthly in advance, effectively. They get paid monthly in advance. Well, the certification is a certification that the health care provider has satisfied or conformed with all the regulations. That's correct, of the Medicare Advantage program. Well, then what constitutes the fraudulent claim? If all I have to do is I have to say I have complied with all the regulations, I've got 1,000 enrollees, so you can pay me on the basis of my satisfying all the regulations, where's the fraud? The fraud is in the conduct, the claim is in the enrollment. So when they don't adhere to those regulations, when they provide kickbacks, when they, and if I just spoke over you, I apologize. No, no, I don't see how I'm making a fraudulent claim if all I'm saying is that I've satisfied all your regulations. Well, because they're getting those enrollees through kickbacks. We've alleged, and I'll point you to Exhibit B, Paragraph 61, we've alleged over $500,000 in kickbacks, not just the $27,000, which is the most blatant. You know what I thought when I read this? I thought to myself, well, if a doctor submitted a claim that he committed an operation and he didn't commit it, what's the value? You know, he didn't perform it. You see these things occasionally. And then there's a certain amount that he got paid for the operation and she got paid for the operation. But in this particular case, the alleged fraud is so general that I gather that the company would lose all their income for that one month period. That's exactly correct. Oh, my God. I mean, that's a real heavy hit. Could Congress have intended that? They're out of business. Well, I don't know if they'd lose all their income, so I may have misspoke, but they'd clearly lose what they got as a result of kickbacks. They'd clearly lose what they got as a result of chasing people down the aisles and using illegal forms and giving out incentives. But there's all kinds of things. I mean, how do you know which people they chased down the – I know I get letters. It may not surprise you to hear that I'm on Medicare. So I get letters to sign up with Medicare Advantage. You know, is that wrong? Well, those letters have to be approved by the Medicare program, but it's not one violation. It's the totality of the conduct in this case. When they pass the Medicare Advantage program, and I notice my red light's on if I can finish my response. Please. Thank you. When they pass the Medicare Advantage program, the critics of that program, just like the critics of private social security, privatization of social security, say that a bunch of hucksters will be banging on doors, chasing people down supermarkets, paying bribes, and therefore there shouldn't be privatization. And what the proponents of those programs like Medicare Advantage say is, no, it will be of the highest priority, these Medicare Advantage – these Medicare marketing guidelines, plus it violates the anti-kickback statute. We'll get you back on rebuttal. Thank you, Mr. Miller.  Mr. Miller? No, this is the amicus. Ms. Miller. Ms. Miller. Ms. Miller. It's an ambiguous name. May it please the Court, Tia Luthi Miller from the Department of Justice, on behalf of the United States Amicus. The United States has a strong interest in the proper application of the False Claims Act to medical services tainted by kickbacks, because kickbacks undermine the integrity of federal health care programs. Do you have a case that says that kickbacks or failure to abide by the kickback statute is sufficient basis for a False Claim Act? I have three, Your Honor. I have the McNutt decision in the 11th Circuit. I have the Rogin decision in the 7th Circuit. I have the Zimmer or Schmidt decision in this case, in this circuit, followed by the Kosenskis. I'm sorry, I'm probably mispronouncing Kosenskis. All of which recognize that submitting a claim tainted by kickbacks can state a claim under the False Claims Act. And the district court erred when it said that the relator's claim was deficient because they, and I'm quoting here, did not allege that compliance with the anti-kickback statute was relevant to the government's funding decision. But it was alleged, wasn't it? I'm sorry, compliance, it was alleged, yes. So to the extent that was a pleading point, to the extent the district court was saying it wasn't properly pled, it was properly pled. And we would point to pages 31 and 32 of the joint appendix where the compliance, discussion of compliance with the anti-kickback statute. How do we know that, I guess we have to accept the complaint is true, but how do we know that a payment, a kickback, resulted in any specific increase in the enrollees for which payment was received? Well, Your Honor, because we're at the pleading stage in this case, you can infer that based on the factual allegations in the complaint. I think if you look at the court's decision, the Seventh Circuit's decision in Lusby, the Ninth Circuit's decision in Ived, they talked about what you have to show to get past the pleading stage in a False Claims Act case when you don't have a specific claim for payment. I've forgotten, are you taking a position, did you take a position in your amicus brief as to whether or not the specific pleading in this case had, with respect to both the marketing provisions and the anti-kickback statute, pled sufficiently under an express false certification theory? Your Honor, we took a position that the complaint did plead a violation of the anti-kickback statute. We did not take a position with regard to the marketing regulations because the district court didn't reach the question. The district court said you don't have a specific claim for payment, you're out on the marketing regulations. I'm curious about how far this can reach and whether or not there is a need for some kind of limiting principle if, for example, we were to adopt, as numerous courts have, a number of courts have, an implied false certification theory. And then that theory factually relies upon the existence and alleged violation of various regulations out there. The health area is enormously regulated. Your Honor, I think it is less expansive than it might seem at first glance. Sure seems expansive to me. The statute requires a knowing violation and the statute requires materiality. We agree that some regulatory requirements, some requirements of government contractors are trivial or are not conditions of payment. So is your answer to my question, then, that the limiting principle is in the application of the materiality? I think that's right. I think that's a correct way to think about it. At least in part. At least in part. That's a correct way to think about it. The anti-kickback statute is a criminal statute, isn't it? It is, Your Honor. It has civil components to it. It has civil penalties and criminal penalties. At heart, it's a criminal statute. That's right, Your Honor. So does it really matter whether we're talking about an express or implied warranty if you are asserting that there's a violation of a criminal statute that's resulted in a fraud and my getting paid? I mean, is that sufficient or does it have to be analyzed under the express or implied warranty? As we say in our brief, we don't think you need to go through the doctrinal boxes of either express or implied certification to decide the anti-kickback statute issue in this case, precisely because the anti-kickback statute makes it so very clear that the government will not pay for claims tainted by kickbacks. I just had a question. Did you kick United out of the program? No, not so far as I know, Your Honor. Well, I mean, if it was so horrible, I mean, trying kickbacks and everything. The Seventh Circuit in the Rogin decision talks about the fact that the materiality isn't a question about getting a particular government official to testify. Oh, yes, if we'd known, we would have kicked them out. It's a question of whether it would be material to the decision. There may well be hapless government officials who allow fraud to go on. That doesn't mean you're not violating the False Claims Act, and the government has limited resources. Our failure to or lack of interest in a particular allegation of fraud is one of the reasons we have relators under the False Claims Act. We don't prosecute every violation of the Anti-Kickback Statute. Sometimes we don't know about them. Sometimes we don't have the resources to do them, which is why the False Claims Act... I wasn't thinking of a criminal prosecution. I was just thinking of administratively disqualifying a company that was paying kickbacks, that's all. That's not a criminal prosecution. That hasn't happened in this case, but it's our position that it's not necessary to a False Claims Act because the Anti-Kickback Statute and the False Claims Act together make it clear that the government has... it's material to the government's decision to pay whether contractors are abiding by the law. Judge Smith has a question. Ms. Knorr, does the... does liability, though known on the express theory here in the Anti-Kickback Statute, turn on the question of valid enrollment and the term validly enrolled? If you're going to analyze this case as an express certification case... Well, it's not valid. No, I... It's not valid if you're there because somebody paid money to get you there. I think that's right. Well, that's what I'm getting at. That's a term of art that is used in this regime, and so I'm wondering whether, in fact, someone is validly enrolled because they meet some kind of objective criteria for enrollment, or whether they are not validly enrolled, and that's your position, because of some taint that comes from activity, improper activity that takes place during the course of the process. It is the case that we think the enrollment is tainted. I also think you could analyze the express certification theory if you want to use that theory. The statute requires the defendant to make or use a false statement, so they made a certification that they would not violate the Anti-Kickback Statute, and they used that certification when they claimed payment. So that's another way to analyze the express certification claim here. But again, with respect to the Anti-Kickback claims, we don't think it's necessary. Thank you, Ms. Miller. Thank you. Mr. Thijs? Did you pronounce it Thijs, sir? It's pronounced Thijs, Your Honor. Thijs. J-H is silent. Third option. What is it again? Thijs. Thijs. Thijs, yes. May it please the Court, I am Michael Thijs on behalf of United Health Group Incorporated, AmeriChoice, and AmeriChoice of New Jersey. You would have made our job so much easier if you were Michael Thijs, T-I-C-E. The great tight end and former coach in the NFL. Yes, I'm so sorry, Your Honor. Next time I'll spell my name differently and come in football gear. Your Honors, the position advanced by the Department and by the appellants in this case is truly impossibly broad. They are asking this Court to basically adopt an expansive view of liability under the false claims act. Well, I thought it was very narrow. If you pay money to get enrollees into a health care provider program and you are paid for that, that's a violation of the anti-kickback statute. That supports a fraud theory, doesn't it? I thought it was narrow rather than expansive. If indeed the complaint alleged the very elegant statement of a violation of the anti-kickback statute that you just articulated, Judge Fuentes, I would agree with you. But you don't have that in this case. There is no explanation of what the violation of the anti-kickback statute is. There's no allegation of foul play. This is at a 12B stage. This is just a broad statement in the complaint, isn't it? Isn't the plaintiff allowed to develop the theory in the course of discovery? Certainly, of course. But under Iqbal and Twombly, they have to plead some plausible violation of the anti-kickback statute that then results in the presentation of a false claim to the United States. I thought actually a specific sum was made, perhaps $27,000. Sounds familiar? A specific payment made and a statement made, don't forget me, by the way, remember that I am contributing or something like that? There are allegations in paragraphs 59, 60, 61. That's not to say it's true. I'm only saying that those are the specific statements made in the complaint. Yes. And if you look at precisely those allegations and in the attachments to the complaint, Exhibit C to the complaint, I believe this is pages 40 and 41 in the joint appendix, at the agreement that is being discussed with respect to Reliance Medical Center. There was this preferred provider agreement, I think it's called a partner PCP agreement, that basically said, we will pay our preferred providers premiums for having enhanced quality, for engaging in certain coordination of care activities, and so on and so forth. It's right in the attachment to the complaint. It's in the appendix. The court can look at it. And what you have to ask yourself is whether the allegations about this partner PCP program and this preferred provider program constitute sufficient allegations of a knowing and willful violation of the anti-kickback statute, so as to give rise to a tainted false claim, as Ms. Miller puts it, when subsequently a claim is presented or when subsequently the AmeriChoice program seeks a capitated payment. Mr. Tice, hypothetically speaking, if I pay a doctor or a clinic, let's say $30,000, and I say, by the way, we need some of your patients to enroll in our program, we would appreciate it very much, and that's the only facts that you have, isn't that a violation of the kickback statute? You would have to have a violation that the conduct is knowing and willful and that you know that when you are doing that, you are violating the anti-kickback statute and that therefore your conduct is knowing under the false claims act. Isn't that a matter of proof rather than pleading? No. You have to plead a knowing and willful violation. That's right out of Iqbal. Is it possible to have a kickback that's not knowing? Is it possible to have a kickback? I'm sorry, Your Honor. That's not knowing? I mean, wouldn't an affirmant of a kickback in and of itself at least imply some knowledge or intent? I suppose so in the most limited sense, but the Supreme Court has said in Iqbal that intent must be pled consistent with the strictures of Rule 8 along with everything else. You know what I couldn't understand? There's one thing about the case I couldn't understand. We get cases where a court dismisses a case for failure to state a claim under Rule 12b-6 and then allows the plaintiff to remain and sometimes they don't. For example, you can get litigation that really, you know, is off the wall and the judge just doesn't allow it. But I wondered why in this case if the judge thought it had to be more clear. I mean, this was not exactly off the wall why the judge did not permit an amendment or permit the plaintiff. Sometimes what happens is the judge will permit the plaintiff to submit an amendment. I know he didn't file it. I understand that. And then they'll look at the amendment and say, well, that's no good either and then dismiss it again. But that didn't happen here, did it? No, but there was no abuse of discretion in Judge Kugler's decision not to grant leave to amend for, among other reasons, the reasons that you alluded to. First of all, in this case, as I think you understand, this is a case that is filed under seal. It was under seal for, I believe, about 10 months before the United States declined to intervene. After the United States declined to intervene, the relator, the plaintiff in the case, then took another two months to actually draft an amended complaint. The first amended complaint is the complaint that is before this court. It was the amended complaint that was served on UnitedHealth and that is the subject of the motion to dismiss. Now, as the motion to dismiss proceeded, there was no effort on the part of the relator to file a second amended complaint and... As far as UnitedHealth was concerned, that was the first complaint, if that was the first complaint that was served. That's correct. That was the first complaint that UnitedHealth... Let me say this to you. It's my experience that usually the plaintiff doesn't attempt to amend when the defendant moves to dismiss merely because they got the motion, because they think that the complaint was valid as it was, but when the judge says, no, no, you didn't allege this and that, then they... If they can, they can't allege it if they don't think they can prove it. But if they, in good faith, can allege this and that, then they'll allege it. And they did not do that here. And Judge Kugler expressly invited that. He pointed out in the closing paragraph of his opinion that under Rule 59, they had the opportunity, post-judgment, to submit a motion to amend and to file a proposed amended complaint to try to correct the pleading deficiencies that were obvious in the complaint. They never properly requested leave to amend. They never tendered a proposed amended complaint to the district court, and so there was no complaint for the district court to act upon. There was a request, wasn't there, for leave to file another complaint? There was a line or two in the opposition to the motion to dismiss that simply said, if we haven't properly pled the statute, we would ask for leave to amend. Does it make any sense to wait and see what the judge's decision is going to be and then request leave to amend? Of course. Do you have to submit a proposed amended complaint? Well, you do have to submit a proposed amended complaint. This court has said that, and the local rules in the District of New Jersey require that. That was part of the basis that Judge Kugler relied upon in denying leave to amend. Let me ask you this. Could a medical service company such as your client participate in the program and receive full payment for its enrollees even though it has disregarded all of the rules of the program? All of the rules of the program. All of the... There's a term that's used. I think it's Medicare regulations. Disregarded Medicare regulations. Well, that's precisely the problem with the theory that is advanced by the appellant here, is that... It sounds like that is your argument, even though there may be a disregard of Medicaid regulations. I'm sorry, Medicare regulations. You're entitled to payment. You have to have some distinction between those regulations that are conditions of participation and those regulations that deal with conditions of payment. That's what the case is saying. My question relates to conditions of participation. Can you violate all of the Medicare regulations concerning United's participation in the program and still get paid? Yes, absolutely. That's exactly what the case is saying. You don't see any problem with that at all? No, because there is an entire administrative regime that is supposed to deal with those conditions of participation. A contractor like AmeriChoice in New Jersey has all kinds of administrative requirements that it has to go to. The petition of payment is something that focuses in... The one I gave before, the surgeon says I performed an operation. I realize it may not be Medicare Advantage, but the surgeon didn't. That's a petition. Right, but that's a classic example, Your Honour, of a factually false claim. The surgeon, by submitting the claim to the Medicare program for payment, is representing I performed heart surgery on this patient. And if he did not perform heart surgery, if he performed some other surgery or no surgery at all, the claim is factually false. So that's a classic condition of payment. It's a classic example of a factually false claim. What we're dealing with here are questions of legal falsity. The condition of payment is that the surgeon done that operation. Correct. In order to bill for a surgery, you have to actually have performed the surgery. Well, but we're not, as you suggest, dealing here with a prototypical false claim, discrete false claim, which is why there is discussion in the briefing, why I asked some questions about express false certification and implied false certification, because it would seem that those theories have to be implicated where there is not the more common prototypical false claim. You've suggested, however, in response to questions from Judge Fuentes, that the defendant here, the respondent, can ignore any and all rules and regulations relative to participation and not be liable under the FCA. Is there no middle ground? What if the government has a practice, a known practice, of treating certain conditions of participation set out in regulations as a basis for payment or nonpayment? And that's known. Your Honor, I think that you can... Then don't we have something that could form the basis for liability in violation? I certainly think that you can have conditions of participation that are also conditions of payment. In other words... Government would have every right where it deems a condition of participation to say this is material to our determination of whether or not you should be paid. Yes. And there's no evidence that that was the case here. There was no requirement of express certification. I find it fascinating that Mr. Begelman argues that this is an express false certification case because there was no express false certification alleged in the complaint. All right. So if that's the case, then don't we necessarily get to the question of whether we should address this under implied false certification? And it seems that this Court has not previously adopted that theory. No, you don't need to reach the implied certification question because whatever you call this theory, whether you call it materiality, whether you call it express certification, whether you call it implied certification, however you want to look at it, the complaint in this case does not meet the requirements that have been laid out in those cases. Even with respect to the anti-kickback statute? The complaint does not allege a... It does not plausibly allege a violation of the anti-kickback statute. I gather you don't disagree that a violation of the anti-kickback statute would support a false claims act. I don't quarrel with the concept that the anti-kickback statute is sufficiently material. In theory it's sufficient, but your opposition is that it wasn't sufficiently plain. That's correct. Nowhere in the complaint does it appear that there was a claim of a violation of the kickback statute. The complaint does not fairly allege facts supporting a violation of the anti-kickback statute. How about the facts stated in the complaint concerning the payment of money in order to produce enrollees for the program? Take those allegations about Reliance Medical Center at face value, Your Honor. That Reliance Medical Center received a payment of $27,000 in order for AmeriChoice to receive information about dual eligible patients at that medical center. That's not enough in and of itself to allege a violation of the anti-kickback statute. Where is the allegation of a referral? Where is the allegation that subsequently payment was demanded for some patient who was improperly referred as a result of that kickback? Where is the inducement? The reference could be all right in the sense that it's a perfectly appropriate reference except that it was achieved the wrong way. In other words, it could be that a reference to United would be a perfectly acceptable reference in terms of medical treatments. There's nothing illegal about referrals in and of themselves. The referral has to be induced by the improper kickback by a knowing and willful violation of the anti-kickback statute. They didn't allege that? That is not alleged. There is no allegation of inducement. Well, I have to think. When I thought about it, I have to think that, well... You know, the $27,000 intrigued me because it's a funny number. You know, it's not the kind of number that you pull out of the atmosphere. And when I saw it, I wondered, where did the $27,000 come from? How did they know that? And you wonder, well, then why would they give them the $27,000? They must have given it to them for some reason. Well, if you read that number in the abstract in the complaint, as abstract as the complaint is, it makes it sound like someone is handing bags of cash to people or envelopes full of cash. Again, I would ask the court to... I think that's the allegation, it was in cash. I don't believe that it does say cash, Your Honor. This was a payment that was made under this partner PCP program. I see that my time is up. Thank you, Your Honor. Yes, thank you, Mr. Simons. Mr. Bingleman? Thank you, Governor. You know, I just had one question, Mr. Bingleman. You had an opportunity here to file an amended complaint or at least to submit an amended complaint. I regard the first complaint that was served as the original complaint because it was the one that was served, and yet I wondered why you didn't take that opportunity. You might not be here today if you had. You're referring to filing a second amended complaint, Your Honor? Yes. Well, Your Honor, we believed at the time that the first amendment complaint was adequately pled, which is one of the things I wanted to address in rebuttal, and my opposition's referral to Rule 59 would not be appropriate because Rule 59 deals with amending the pleadings, I believe, after judgment for the purpose of amending the facts, not the conclusionary allegations. And all that was lacking in this complaint in regards to the kickback theory was that while we do mention the anti-kickback statute and we do mention kickbacks, and again, not just $27,000 worth. If you look at Paragraph 61, Exhibit B, C, and D, mainly Exhibit B, it actually totals $500,000 in miscellaneous kickbacks that were given to a whole slew of doctors. The $27,000 is just the most outrageous. And we believe we alleged it, but that rule would not allow us to cite the actual anti-kickback statute. It's really an amendment to add facts, not allegations. And we believe that our allegations address that issue. I wanted to address two items on rebuttal. I'm sorry. Did the district court address the anti-kickback statute? The district court did not. What it said was that we didn't plead it, and therefore it wasn't part of it. Well, address it in saying you didn't plead it. I'm sorry? The district court addressed it by saying you didn't plead it. Well, they said we didn't cite it, I should say. Did you argue it? He did not give us oral argument, Judge. And what I wanted to address is that the allegation that these marketing guidelines and the anti-kickback statute are not conditions of payment, and we've discussed that at page 23, the bottom of page 23 of our brief, where we point the court to specific regulations that do say they are conditions of payment. Additionally, the defense would have you, the appellee would have you believe that we didn't actually plead these allegations in our complaint. So briefly, I would just like to point out to the court that we have alleged over $500,000 in kickback, and I'll refer you to paragraphs 33, 59, 61, appendix page 32 and 42 in Exhibit B. We have alleged false claims were submitted for payment, and that's paragraph 80, appendix page 46. We have alleged that these certifications that were submitted on a monthly basis were not only false statements but were conditions of payment, and that's paragraphs 45, 46, and 48, appendix page 37 and 38. And, Judge, I would close with saying that the appellee who has been accused of these material violations would have the court debate how many angels can dance on the edge of a pin or the top of a pin. And what they want to do is get into this debate that there's a clear line between conditions of payment and conditions of participation. And I would respectfully suggest that there's a blurred line, because if the violations are material not clear or blurred, there are many of the cases, some of the cases do speak to such a distinction. That's correct, Judge. And I think we've met both distinctions in this case. But what I want to say, Judge, is the real issue is materiality. And here we've alleged kickbacks. And you have to go back to how historically divergent this program is from the normal government function. I mean, the nexus has to be between a fraud and the payment. That's correct, Judge. And what you're alleging is that health services simply, or United Health Services simply didn't abide by the conditions of the program. Conditions of the program and payment. And that supports your Fraudulent Claims Act complaint. That's correct, Judge. That's kind of, that's what Mr. Tice is complaining about, an expansive theory that would Judge, an expansive theory would be if we said That would the district court said that would create a piggy bank for plaintiff's complaints? The district court, respectfully, Judge, the district court was wrong and should be reversed. Because we're not alleging that they didn't use number two pencils. We're alleging items that the testimony from the Congress of the United States, according to the congressional record, said was of the highest priority. That's a public policy priority that has absolutely nothing to do with what you've pled or not pled in your complaint. Well, Judge, I've indicated what we've pled. And we clearly pled a violation of the anti-kickback statute. And it's in those paragraphs that I cited. We clearly indicated that they provided false certifications on a monthly basis. And that these marketing regulations are not trivial. And the kickbacks clearly aren't trivial. You didn't say, you didn't particularly use the anti-kickback statute. You didn't use the term. But what you're saying is that you pled that payments were made, or illegal payments were made, in order for the health service provider to get enrollees for which they were paid. Judge, actually, we did use the word anti-kickback statute. You used the term. It's in those paragraphs that I referred you to. And what we didn't cite is the actual numbered site. We didn't say that in violation of, I'm making up a number, you know, Title 22 USA. You know, we didn't give an actual site. And we gave the cause of action as a violation of the False Claims Act. They violated the False Claims Act because they violated the anti-kickback statute, which is part of the marketing guidelines and regulations in, as indicated, between page 21 and 28 in our brief, and specifically at the bottom of page 23. And what I would ask the Court to do to finish up. Thank you, Your Honor. I just want to tell you, I have a number two pencil. Although I haven't been using it. Thank you, Judge. Thank you, Mr. Pagan. And, Mr. Tine, thank you very much. We'll take the case under advisory. Thank you. We'll call the next case.